This morning we have five cases to be decided by the panel. Three of which are the orally argued. Two are presented and submitted on a brief. For the record, the submission and the briefs are 06-3266 Wade v. Labor and 06-3363 Estella v. Navy. The first orally argued case is 063141 Theus v. Transportation. Did I get that right? Yes. Thank you. Mr. Dickinson, you are reserved five minutes for your rebuttal. Yes, sir. Thank you very much. Is everybody familiar with the rights? I presume you are. I think so, Your Honor. Let's move forward, Mr. Dickinson. Thank you very much. May it please the Court, my name is Hop Dickinson. This is an employment case. Jessica Theus is here with me today. She is sitting next to me. She is here because this may be her last chance. It will be four years come this May when she was discharged by the Department of Transportation. She is a single mother. She has been struggling both emotionally and financially, experienced her house foreclosure, exhausted her lifetime savings, and moved from Houston, Texas, where she used to live, to Oakland, California, where she now lives with her mother. I recently saw a movie, a 1930s movie, called My Man, God Trap, which starred William Powell. Mr. Dickinson, can we get to the legal issues involved in the case? Yes, Your Honor. Is that why we should be reversing the board? Yes, Your Honor. There are two legal issues in this case. The first one is that the hearing officer used the wrong legal standard. Second, that the substantial evidence rule does not warrant her termination. You may remember that the hearing officer determined that Jessica did make a protective disclosure, but he also held that the disclosure was not a contributing factor in her termination. The hearing officer made a lip service to applying the contributing factor standard, but he actually applied the motivating factor test. Let me ask you a question, if I might. Sorry to interrupt. Yes, Your Honor. The hearing officer also determined, or determined, right, that even if there had been no disclosure, the same outcome would have occurred. By clear and convincing evidence, the government demonstrated that with two performance improvement plans in place, the second one ended in failure, with two failures on the certification examination, that there was clear and convincing evidence that the removal was the step that would have occurred anyway. There's no disagreement with that as the factual record, correct? Well, we're saying that the department produced no evidence whatsoever on behalf of their burden. They simply did say that she had failed to pass the exam. I guess that's what I'm trying to find out. I mean, when you say they produced no evidence at all, the evidence that she was on two action plans, the second of which ended in determination, and that she had twice failed the certification exam, that's a factual basis on which the determination was made that the agency would have taken action anyway. You don't disagree with that, do you? I know you disagree with the interpretation, but that is the factual record, isn't it? Well, that is the record, but the department failed to produce any kind of evidence in terms of the difference between, in order to show whether or not there was in fact, they produced any evidence, we believe evidence should compare between folks in similar standing as Ms. Theis. That is that under similar circumstances, what would have been done. And in this case, the examination, it's a pretext. Okay. Well, here's my question for you. If, assuming for the sake of argument, that we were to say that that did amount to a proper foundation for applying it by the board, that there was clear and convincing evidence, would that loop your argument about the standard that was applied, the contributing factor? No, because the contributing factor, they used the, they played the lip service of the contributing factor, but they actually used the motivating factor, motivating factor in that they, some wrong, that the wrongful act, evidence of wrongdoing, must be produced by her supervisor. And that is an old test, that that should not have been used, because that was pre-1994, prior to the amendment of the Whistleblowers Act. And what that, under the motivating factor test, the case law looked to the supervisor's conduct and the motives behind the discharge. And there was always, the employer would be able to come up with independent reasons why they were discharged. So, it was awful difficult for any whistleblower to establish it, so Congress decided to change that, and the hearing officer just simply stayed with the old, this motivating factor standard. That is, Your Honor, however, our argument. That Congress clearly intended to reduce burden, and said that, as the Morano case said, send a strong clear signal to whistleblowers that Congress intended that they be protected from any retaliation related to whistleblowing. Wasn't there an actual finding here, basically, that the whistleblowing had nothing to do with the termination? Maybe I misread the words of the decision, but the impression I got was that they said, these people didn't even know about the whistleblowing. Well, they knew about it because the first, the trainer knew about the rumors of whistleblowing. Counsel, the trainer's not the one that took the action in this case. Tarengo, I may be saying his name wrong, but Tarengo and Frame were the supervisors that were arguably taking the action, and I understood the A.J.'s findings of fact to be that Tarengo had absolutely no knowledge of the whistleblowing, and that while Frame may have generally understood that there might have been some disclosure, he knew nothing of the specific facts at all. Your Honor, we think that constructive knowledge should be imputed to him because his supervisor, Torrebonner's supervisor, as well as the supervisor above him, knew that the entire Houston Center knew that the whistleblower was going on because the person who was investigated was making scenes, and it soon spread throughout the place that everybody knew about it, so how could he not know? So we think that constructive knowledge should be attributed to him. What about the fact that case law has suggested that the amount of time in between a protected disclosure and when the action is taken is a relevant inquiry, and here nearly two years have passed, and during that two years, the employee had been given both a promotion and a raise. It seems to me that if these folks were interested in retaliating, that they could have done it a little quicker and they might not have promoted and raised him. Well, it's a cause and effect, and what we're saying is that the department is looking at between the time between the disclosure and the termination as being the two years, but actually we need to look at a cause and effect nexus between the disclosure and the termination, and this impacted the training from the get-go and therefore poisoned the entire atmosphere of training, and so it is the timing of the training that affected that, and the standard that's required in the contributing factor does not necessarily look to the time, and if you would draw the dotted line from the time that disclosure was made until she was terminated, that there can be a reasonable nexus shown because simply the training went awry. The training was supposed to allow some 320 hours, and they stopped the training only 61% at that point, and one of the reviewers said that it was preconceived that she be not being given a full training. In fact, there were only two... During her training session, as Judge Moore points out, she was not only given a new job opportunity but also given a raise after the whistleblowing had taken place. Yes, sir. So the nexus really is very difficult to attach, isn't it, when you have both a raise and a new opportunity for a new position subject to training, and the training was undertaken. It was not completed. Wow. But there were two PRPs that were issued. Yes, yes. How do you answer that? Well, Your Honor, it's a pretext of any kind. When the employee explains that she did not pass exams, why did she not pass these exams? Because she was not given proper training. They didn't give her proper training because it's supposed to be daily lessons, and these exams were supposed to be based on the daily exams, and they did not have the daily lessons. And these folks, trainers, watched TV, played video, and read the Bible. Not that the Bible is not important, but they were supposed to train her during this period of time. In particular, in the rebuttal time, do you want to state that? Yes, Your Honor. Thank you. Mr. Redman? Thank you, Your Honor. May it please the Court. The Court should affirm the decision of the MSPB. It's in accordance with the law and clearly supported by the record. The petitioner has raised two issues. One, that the Board's decision is inconsistent with this Court's decision in Verano, and the other, that the administrative judge incorrectly weighed the evidence. I'll address them both. Verano is simply not positive. It is not a case that controls here. There's no question that in Verano this Court said that all that a petitioner has to show is that the whistleblowing, either the fact of whistleblowing or the nature of the whistleblowing itself, played some kind of factor in the agency's decision-making. But that is not the issue here. In Verano, the Board had determined as a matter of law that you had to show the fact of whistleblowing played a role in the decision. That is just not the case here. Here, the administrative judge found that the whistleblowing played no role, that the record did not show that the whistleblowing played any role in the agency's decision-making. And that removes this case from the ambit of Verano. The second argument that the petitioner makes is that the administrative judge failed to properly weigh the evidence. Well, the administrative judge is entitled to substantial deference in his weight of the evidence. And the decisions, indeed, this Court has said are virtually unreviewable as far as credibility is concerned. The Court has even reversed the Board for failing to follow an administrative judge's credibility determinations. The decisions that the judge made in this case were clearly based on substantial evidence in the record. The record is replete with examples of where Ms. Theis failed to train properly, failed to attend her training. The record contains evidence that each of the deciding officials and the one trainer who testified in this case were not even aware of the alleged whistleblowing activity. One person was aware, generally, that there had been some sort of investigation, but that person was not aware of his specific circumstances or Ms. Theis' specific involvement. Mr. Evans, hypothetically, let's assume for a moment that whistleblowing is accomplished. The person is identified as a whistleblower. The agency now decides, well, we really don't want that person here anymore. So in order to get rid of that person, what they do is put together a program and make it look like they're giving her a raise, giving her a new position, known full well that maybe she will not be able to pass through that training. What if that aspect of it had been proven by the opponent? If that had been proven, I believe that that would have been problematic, to say the least. If an agency wants to get rid of somebody because of whistleblowing, that violates the WPA. But that was not- But they do it very subtly. They don't do it directly, obviously, because they know they're getting their legal problems. But they do it on a subtle basis. Government employment can be very subtle in the way they rearrange positions and the way they rearrange position descriptions and otherwise. You take the position that, sure, she's made a whistleblowing disclosure, and she's going to be a problem employee from now on because of that, so we want to get rid of her. So we establish a track record showing the fact that we're going to be giving that person a pay increase. We're also going to give her an opportunity for another position, knowing full well that the training factors required for that position will not be fulfilled. Is that a problem? That would be a problem. If the facts, if the record showed that, that would be a problem because the agency would have been motivated by the alleged whistleblower's status as a whistleblower. And there's no- I don't think there's any question in that case. But the fact is that in this record, the record before the administrative judge, the record before this court, there is no such evidence. And this court reviews for substantial evidence. There was substantial evidence to the contrary. I'm sorry. Do you agree that the wrong standard was applied? No. Your Honor, the correct standard was applied. The decision- the argument that the wrong standard was applied, I think, stems from the Murano case itself. But that is a muddying of the distinction between questions of law and questions of fact. Murano was clearly about the question of law. The agency had- or the board had made its findings and had said that given these findings that we've made here, even these findings that we've made here do not constitute a violation of the statute. This court ruled those findings and said that they- if those were the findings, that it did violate the statute. But here, the administrative judge weighed the evidence. He applied the correct standard, which is- the standard is whether it was a contributing factor. And the standard in Murano is whether it contributed at all, as this court said. I don't know. I read the AJA's decision as talking about a lack of retaliatory motive. And it seems to me that the Murano decision suggested that contributing factor, not retaliatory motive, was the correct standard. I think that's correct. Could it maybe be that it's harmless error in this case, that even if the AJA applied the wrong standard, it's harmless error because he still found facts sufficient under the contributory factor? I think that would be correct, Your Honor. It would be harmless error, but I don't agree that the administrative judge applied the wrong standard. I think that he does mention in the opinion, and this is- you know, the Murano decision is clear, that motivation is not the only issue involved. But it doesn't say that it's not a factor to consider. In fact, in most of these cases, it will be a factor, and I think Murano recognizes that. But the administrative judge did not say, I find no motive, therefore I find no whistleblowing because there has to be a motivation to discriminate against the whistleblower. The judge just cited that as one factor in support of his decision. And, you know, there were other factors. And the point is, in this case, Murano allowed a whistleblowing claim when there was evidence that the precise conduct that had been involved in the whistleblowing disclosure motivated the agency, even though the status of the appellant as a whistleblower, per se, did not itself motivate the agency. That is simply not the case. Ms. Theis wasn't fired for reporting for anything having to do with time and attendance records. And that case is just clearly distinguishable. And other than that- That would be a fair violation of the law at that point. If she were fired because of her disclosure. It would violate Murano, yes. And that's not disputed in this case. But it can be a contributing factor towards her training schedule. If, in fact, the training is so subtly changed to assure that she would fail in the process, there are shades of training that could be prepared in such a way that, sure, we go through the motions of trying to train a particular person, but we know full well that this type of training, she would fail. Yes, sir. That is certainly the case that factually that could happen, and that would be a violation of the statute. But the record is overwhelmingly clear. The transcript reveals and the testimony of the witnesses reveal that that wasn't the case here. In fact, if you go through the factual sequence in the training, there were two phases to the training.  She was given a notice of unsatisfactory performance. She was then placed on a performance improvement plan through which she could have improved herself. And she, in fact, did on the first performance improvement plan and succeeded in passing the first stage of the training. She then went on to the second stage of the training. And all the while, she was given different trainers to accommodate her personal conflicts with certain trainers. And she was given plenty of opportunities for that. She was also issued a notice and then another performance improvement plan, in which she was given time to repass a test that she had taken and failed. The testimony of the government witnesses was that they wanted her to successfully pass the training because they were short on personnel. And so they did everything they could to actually accommodate her until they realized that she simply was not going to pass. And that's when they cut off the training. For example, one thing that the trainer and her supervisor, Mr. Torregato, testified that they did was they understated the hours that she had completed in training. So, you know, if she were in for an eight-hour shift, for example, ordinarily they would charge somebody eight hours of the amount of training that they're entitled to under the agency's standards. Well, if in fact she had not, you know, spent the entire time training or was light, you know, the air traffic was light, they would have marked her down so that she could have more hours and succeed through the training. So while I agree, Judge Garopso, that there are certainly possibilities where you could create a situation where your real goal would be to retaliate against the whistleblower, that just simply was not the case here. And the record both supports the finding that the whistleblowing was not a contributing factor and the record also supports by clear and convincing evidence that the agency would have done the same thing because of the failure to train. If there are no further questions for me, I'll rest on this argument and our papers and see if the court should affirm the judgment of the board. Your Honor, prior she was with the FAA for 12 years. Prior to that, by all concession, she was a good employee. She had no problems whatsoever. And when she came to Houston as a result of whistleblowing, they did not only give her poor training, but there were only two applicants to this program. The other applicant, she passed the exam before they accepted her into the program. In other words, she was guaranteed to succeed in the program. It's a pretext. They say they did everything to help her out. They did not because they only completed 40 percent of the training that they should have given her. I understand that you and certainly your client feel that the decision below was a wrong take or interpretation of the evidence. But here aren't we limited to a standard of review that's very deferential? And even if you disagree with the way that the fact finder below took a look at this? No, Your Honor. It's a wrong standard. And when you say it's a wrong standard, why don't you respond directly to what Mr. Edmonds said, which is it isn't the wrong standard. It's possible to have motivation be part of the discussion of a contributing factor without it being in the application of a motivating factor standard. My understanding is that the motivating factor, the standard that they use as a matter of law, as a legal standard, they should have never used because this motivating factor is problematic because it always uses, it requires a connection between the wrongdoing on the part of the supervisor and the termination. And the employer always has some independent reason to do it. That's why Congress outlawed it, Your Honor. So is your position that if an ALJ board mentions motivations, that they're in the realm of the motivating factor and therefore they claim the wrong test? No, I think certainly a motivating factor can be used. But a motivating factor cannot be used as the basis of the opinion. That's what they did. I mean, in fact, this was critical to the ALJ's opinion. He said there is no evidence to corroborate the appellant's claim. However, that her disclosure also includes alleged wrongdoing by a train-mender and or a torogano. All evidence other than her barristership supports conclusion that the disclosure made in or about June 2001 did not include alleged wrongdoing by either of these officials. So this was not just a, you know, I can certainly see a motivating factor being a factor, the chapter contributing factor, but this was the basis that he, you know, it's one of those things where a hearing officer has this book and he used that book to rule against her. Counsel, credibility determinations are virtually unreviewable by us. I mean, we don't have the ability to see Mr. Turengo or Mr. Frame testify and decide whether they're truthful or not. So we have to give deference to the truthfulness conclusions of the lower court. And in this case, the lower court judge or the administrative judge found that this was not a contributing factor because the two relevant people, Turengo and Frame, had no knowledge. One of them had no knowledge at all, and the other one had only the vaguest idea that something had happened but had no knowledge with regard to the specifics. You're saying they had to know because lots of other people knew, but we can't challenge that credibility determination. Your Honor, our legal argument is twofold. One is that they used the wrong standard of doing it. Secondly, that the substantial evidence does not support termination. And this credibility question goes to only a small component related to the substantial evidence rule. Mr. Dickinson, you're welcome to use your little time. Thank you. Do you have any one final statement, one quick statement? Well, I think they flat out, as a matter of law, used the wrong standard here. And something's wrong here. She was a good employee until she got to Houston, and it's an unexplained reason that you can draw it out of line to the court training from the outset. Thank you. Thank you, Mr. Dickinson. Case is submitted.